UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  7/30/2025
```

TRAVIS M.,[1]

                    Plaintiff,

          -v-

COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

                 Defendant.

**REPORT &
RECOMMENDATION**

24-CV-07341 (JPO) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

**To the Honorable J. PAUL OETKEN, United States District Judge:**

Plaintiff Travis M. ("Plaintiff") brings this action pursuant to 42 U.S.C.
§ 405(g) seeking judicial review of the final decision of the Commissioner of the
Social Security Administration (the "Commissioner") denying his claim for
Supplemental Security Income ("SSI") under the Social Security Act (the "Act").
Plaintiff has moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).
For the reasons stated below, Plaintiff's motion should be **GRANTED,** and the case
should be **REMANDED** to the Social Security Administration for further
proceedings.

## I.    BACKGROUND

Plaintiff is a 31-year-old man with at least a high school education and prior
work experience as a fast-food cook.  Certified Administrative Record, Dkt. No. 10

---

[1] To preserve his privacy, the plaintiff is referred to by his first name and the first
initial of his last name.

(hereafter, "AR. __") at 108, 230.[2]  Plaintiff has not worked since December 1, 2012.

*Id*. at 229.  Plaintiff claims he is disabled due to the following conditions:

depression, anxiety, insomnia, auditory and visual hallucinations, and blurriness in

the left eye.  *Id*.  Plaintiff filed his application for SSI on November 23, 2021 and the

Commissioner's final decision was issued on February 8, 2024.  *Id*. at 59.

### A.    Medical History

The record contains several evaluations of Plaintiff's physical and mental

health, which are discussed below.  As the Commissioner notes, Plaintiff does not

challenge the adverse findings relating to his physical impairments, so they are not

discussed in detail.  *See* Dkt. No. 17 ("Comm'r Br.") at 1 n.2.

### 1.    Evidence Related to Physical Health Conditions

On July 19, 2022, Dr. Shrikant Bhamre conducted an ophthalmologic

consultative examination in response to Plaintiff's complaints of left eye blindness.

AR. at 381.  Humphrey visual field testing of the left eye revealed a very constricted

visual field, and Dr. Bhamre diagnosed Plaintiff with left-eye blindness.  *Id*. at 383–

84.  Plaintiff's prison records, dated June 4, 2021, reveal visual acuity of 20/800 in

the left eye.  *Id*. at 339.  An examination conducted by Dr. Manuel Paz on January

19, 2022 revealed a visual acuity of 20/200 in the left eye with marked limitations

for activities requiring visual acuity and depth perception.  *Id*. at 352, 354.

---

[2] Citations to "AR." refer to the page numbers in the bottom right of each page, not the automatic numbering created by the Electronic Case Filing system.

## 2.    Evidence Related to Mental Health Conditions

On January 19, 2022, Dr. Joshua Goldstein conducted a psychiatric evaluation in which Plaintiff reported difficulty sleeping, loss of appetite, irritability, social withdrawal, dysphoric mood, diminished sense of pleasure, traumatic flashbacks, intrusive thoughts, mood swings, auditory hallucinations, and difficulty concentrating.  AR. at 346–47.  Dr. Goldstein found evidence of mild limitations in understanding, remembering, or applying simple directions, moderate limitations in interacting adequately with supervisors, coworkers, and the public, mild limitations in sustaining concentration and performing tasks at a consistent pace, and moderate limitations in regulating emotions, controlling behavior, and maintaining well-being.  *Id.* at 348–49.  These findings, Dr. Goldstein concluded, were consistent with psychiatric and cognitive problems that may "significantly interfere with the claimant's ability to function daily."  *Id.* at 349.  He diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder ("PTSD").  *Id.*

On June 28, 2022, state psychiatric consultant Dr. Blackwell wrote "it would be highly unusual for people who are psychotic to the degree that they are responding to their hallucinations also to be as functional as [Plaintiff], especially with no treatment."  *Id.* at 136.  He further indicated that the evidence on file did not support Dr. Goldstein's January 19 diagnosis.  *Id.*

Based on a February 11, 2022 disability determination explanation, state psychiatric consultant Dr. Brown concluded that Plaintiff could meet the basic

demands of unskilled work, but noted Plaintiff might sustain better in a setting with only superficial contact.  *Id*. at 122.

On August 6, 2022, Dr. Seth Sebold conducted a psychiatric evaluation in which Plaintiff reported difficulty sleeping, loss of appetite, low energy, frustration, and adjustment difficulties after release from incarceration.  *Id*. at 387.  Plaintiff reported hearing a voice speaking to him, engaging in conversations with that voice, and experiencing hallucinated visions of a deceased friend.  *Id*.  While noting Plaintiff's difficulty describing his symptoms clearly, his mildly unkempt appearance, and his satisfactory personal hygiene and grooming, Dr. Sebold found "no evidence of hallucinations, delusions, or paranoia."  *Id*. at 388.   Dr. Sebold diagnosed Plaintiff with an adjustment disorder, with mixed anxiety and depressed mood, with attention deficit hyperactivity disorder ("ADHD"), as alleged by history, and left eye blindness as reported by Plaintiff.  *Id*. at 390.  Dr. Sebold additionally found mild to moderate limitations in Plaintiff's ability to understand, remember, and apply complex directions and mild limitations in his ability to sustain concentration, perform a task at a consistent pace, regulate emotions, control behavior, and maintain well-being.  *Id*. at 389–90.  Although Dr. Sebold found these results consistent with psychiatric problems, he concluded they were not significant enough to interfere with the Plaintiff's ability to function daily.  *Id*. at 390.

Finally, Plaintiff received treatment at Phillips Family Practice from specialist Dr. Eric Gayle, nurse practitioner Judith Elie-Eveillard, and licensed master social worker Anabelle Arias.  *Id*. at 474.  In a report dated April 10, 2023,

Arias found Plaintiff negative for anxiety and depression, his mood unremarkable, his appearance within normal limits, and no presence of hallucinations, delusions or passive suicidal ideations. *Id*. at 487.

### B.    Administrative Hearing

Plaintiff filed for SSI on November 23, 2021, asserting that he was disabled beginning on August 1, 2003. *See* AR. at 48. His claim was initially denied on February 15, 2022 and denied again upon reconsideration on September 15, 2022. *Id*. Plaintiff then requested a hearing, which was held on July 25, 2023 before Administrative Law Judge ("ALJ") Brian Kanner. *Id*. at 59. Plaintiff appeared by telephone. *Id*. at 48. On February 8, 2024, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. *Id*. at 48–59. Plaintiff sought Appeals Council review, which was denied on July 31, 2024. *Id*. at 1–7.

During the hearing, Plaintiff testified that he could not see out of his left eye and that he visits a specialist for his vision every three months. *Id*. at 99, 104. Further, Plaintiff testified that on rainy days, his eye throbs, gets puffy, turns red, leaks fluids and causes considerable pain. *Id*. Plaintiff also testified that he receives treatment for depression and anxiety, speaking to a therapist or a psychiatrist once a week or once every other week. *Id*. at 102.

In a typical day, Plaintiff wakes up, takes a bath, brushes his teeth, and then gets dressed in clothing laid out by his mother. *Id*. at 98. On occasion, Plaintiff is unable to eat due to stomach issues. *Id*. While he goes outside, Plaintiff tends to avoid interacting with others and usually requires a companion. *Id*. at 98–100. To complete daily chores, such as laundry or grocery shopping, Plaintiff often relies on

assistance from his mother. *Id*. at 100–101. Certain chores exacerbate his anxiety, causing him to feel claustrophobic, hot, or uncomfortable in his skin. *Id*. at 101. In addition, loud noises, small spaces, or an inability to contact his mother aggravate his anxiety and interrupt his sleep. *Id*. at 102.

Finally, Plaintiff testified that he had spent seven years in prison, from 2014 to 2021, and is currently on parole. *Id*. at 105. Since his release, Plaintiff has been hired and fired approximately 10 to 15 times. *Id*. at 105–106. He previously worked as a security guard but was terminated because he could not sit down as required to relieve his pain. *Id*. at 106. Inconsistent with his prior statements, Plaintiff also testified he was terminated from his job because he was on parole. *Id*. Plaintiff then explained that he often received interview confirmations but would later be informed that a potential employer could not hire him. *Id*.

### C.    The ALJ's Decision

On February 8, 2024, the ALJ found Plaintiff not disabled under 1614(a)(3)(A) of the Act. AR. at 48–59. This decision followed the five-step analysis required by 20 C.F.R. § 404.1520(a)(4)(i) through (v).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his application for SSI. *Id*. at 50.

At step two, the ALJ found that Plaintiff had the four following severe medically determinable impairments ("MDIs"): loss of central vision acuity, obesity, major depressive disorder, and generalized anxiety disorder. *Id*.

Although not initially listed within Plaintiff's disability report, *see id*. at 229, after a consultative psychiatric exam conducted on January 19, 2022, Dr. Goldstein

6

assessed plaintiff with a specific learning disorder with impairment in reading and
mathematics. *Id*. at 349. The ALJ, however, did not find that Dr. Goldstein's
evaluation supported an MDI of learning disability. *Id*. at 51. To reach this
conclusion, the ALJ considered Dr. Goldstein's report indicating Plaintiff's "mild"
impairment with attention and concentration in combination with evidence of
Plaintiff's ability to perform simple math, to read without difficulty, and to complete
study modules for his security job. *Id*. at 51, 348. While Plaintiff reported a history
of learning disability, the ALJ found that diagnosis was not supported by acceptable
clinical and/or laboratory diagnostic evidence. *Id*. at 51. Dr. Goldstein additionally
assessed PTSD. *Id*. at 349. However, the ALJ found that the record did not support
an MDI of PTSD, and the evidence instead suggested that Plaintiff's depressive
disorder lacked psychotic features. *Id*. at 51. The ALJ also noted that Plaintiff
denied trauma associated with his incarceration. *Id*.

At step three, the ALJ determined that Plaintiff's impairments,
independently or in combination, did not meet or medically equal an impairment
listed in 20 C.F.R. Part 404, Appendix 1 to Subpart P. *Id*. In evaluating the
Plaintiff's visual impairments, the ALJ considered multiple visual field-testing
results. *Id*. In evaluating the Plaintiff's mental impairments, the ALJ considered
several treatment notes and objective medical evaluations. *Id*. at 52. The ALJ
found that Plaintiff's mental status generally presented as "unremarkable," and
that the overall record evidenced only mild or moderate limitations with mental
function, socializing, attention or concentration, and adapting and managing. *Id*.

The ALJ also determined that the record established Plaintiff's independence in managing basic functions of daily life.  *Id*. at 53.

The ALJ then found that Plaintiff had a residual function capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations resulting from visual impairment: Plaintiff cannot work around unprotected heights and machinery with moving parts, he cannot drive a commercial vehicle; and he is limited to simple, routine instructions and tasks.  *Id*.  To reach this conclusion, the ALJ considered the record in full, including Plaintiff's reported symptoms—major depressive disorder, general anxiety disorder and loss of central visual acuity—in combination with objective medical evidence.  *Id*. at 54.  The ALJ ultimately found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were "not entirely consistent with medical or other evidence in the record."  *Id*.  The ALJ emphasized that Plaintiff supplied no evidence suggesting he engaged in mental health treatment before March 2023, and that the record reflects commendable progress with his depression and anxiety.  *Id*.  Finally, the ALJ cited multiple negative screenings for anxiety and depression.  *Id*.

Although Dr. Goldstein found several moderate functional limitations, the ALJ found Dr. Sebold's assessment of generally non-severe impairments more persuasive.  *Id*. at 55.  The ALJ reasoned that Dr. Goldstein's findings were based on Plaintiff's self-reports and were inconsistent with the medical record as a whole. *Id*. at 56–57.  The ALJ additionally found Dr. Paz and Dr. Bhamre persuasive, with the exception of Dr. Paz's finding of marked limitations in visual acuity, as that

examination only measured uncorrected vision. *Id*. at 56. The ALJ underscored Dr. Paz's findings of Plaintiff's independence in personal care and ability to participate in cooking, cleaning, laundry, and shopping with his mother. *Id*. The ALJ further noted that both opinions were consistent with the pattern of medical evidence in the record and Plaintiff's testimony. *Id*.

Finally, the ALJ considered determinations by state psychiatric consultants Dr. Brown and Dr. Blackwell, pointing out Dr. Brown's findings that Plaintiff retained the ability to meet the basic demands of unskilled work and Dr. Blackwell's findings questioning the evidence of psychosis. *Id*. at 57. The ALJ found Dr. Blackwell's opinion persuasive. *Id*.

At step four, the ALJ found that Plaintiff had no past relevant work experience. *Id*.

At step five, the ALJ found, considering the Plaintiff's age, education, work experience, and residual functional capacity, that there are jobs existing in significant numbers in the national economy that Plaintiff could perform. In reaching this conclusion, the ALJ considered the vocational expert's ("VE") opinion. *Id*. at 58. The VE stated that an individual similarly situated to Plaintiff could perform the requirements of silver wrapper, hand packager, or housekeeper. *Id*. Based upon the VE's testimony, the ALJ concluded that the Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and entered a finding of "not disabled." *Id*. at 59.

### D.    Procedural Background

Plaintiff timely commenced this action on September 27, 2024.  Dkt. No. 1.

The Commissioner filed the administrative record on December 2, 2024.  Dkt. No.

10.  Plaintiff then submitted his brief on February 28, 2025.  Dkt. No. 13 ("Pl. Br.").

The Commissioner filed a brief in response on May 15, 2025, which Plaintiff replied

to on May 27, 2025.  Comm'r Br.; Dkt. No. 18.

## II.    LEGAL STANDARDS

### A.    Standard of Review

A court reviewing a final decision by the Commissioner "is limited to

determining whether the [Commissioner's] conclusions were supported by

substantial evidence in the record and were based on a correct legal standard."

*Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (cleaned up).  When "the ALJ has

applied an improper legal standard," or when there is not substantial evidence to

support the ALJ's determination, the reviewing court may remand to the ALJ.  *See*

*Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

"Substantial evidence is 'more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales,*

402 U.S. 389, 401 (1971)).  The Commissioner's findings as to any fact supported by

substantial evidence are conclusive.  *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir.

1995); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the

administrative record may also adequately support contrary findings on particular

issues, the ALJ's factual findings must be given conclusive effect so long as they are

10

supported by substantial evidence.") (cleaned up).  Thus, if sufficient evidence supports the ALJ's final decision, the court must grant judgment in favor of the Commissioner, even if substantial evidence also supports the plaintiff's position. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original) (cleaned up).  "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded to the Commissioner's decision." *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (cleaned up).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) (cleaned up).  Courts review de novo whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) (reversing where the court could not determine whether the ALJ applied the correct legal principles in assessing plaintiff's eligibility for disability benefits); *Thomas v. Astrue*, 674 F. Supp. 2d 507, 515, 520 (S.D.N.Y. 2009) (reversing for legal error after de novo consideration).  A court may not defer to an ALJ's determination that is the product of legal error, including a failure to set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based."  42 U.S.C. § 405(b)(1); *see Cullen v. Kijakazi*, No. 23-

CV-1960, 2024 WL 564501, at *2 (S.D.N.Y. Feb. 9, 2024), *adopted by* 2024 WL 1158455 (S.D.N.Y. Mar. 18, 2024).

**B.    Standard Governing Evaluations of Disability Claims by the Agency**

The Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

An ALJ must proceed through a five-step analysis to make a disability determination. *See* 20 C.F.R. § 404.1520. A claimant bears the burden of proof as to steps one through four; the Commissioner bears the burden as to step five. *Selian*, 708 F.3d at 418. "The steps are followed in order: if it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not progress to the next step." *Martinez v. Comm'r of Soc. Sec.,* No. 18-CV-580, 2019 WL 1331399, at *2 (S.D.N.Y. Mar. 15, 2019).

First, the claimant must prove he is not currently engaged in substantial gainful activity. Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." At step three, the ALJ must conclude the claimant is disabled if he proves that his

12

impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work. If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education, and past work experience, that the claimant is capable of performing other work. If the Commissioner proves other work exists that the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.

## III.    DISCUSSION

Plaintiff presents the following arguments for remand: (1) the ALJ improperly assessed Plaintiff's RFC; (2) the ALJ improperly assessed Plaintiff's disabling symptoms; and (3) the VE's testimony did not provide substantial evidence to determine that Plaintiff could perform work that exists in the national economy. Pl. Br. at 1.

### A.    Assessment of Plaintiff's RFC

Plaintiff advances three separate arguments to support his contention that remand is appropriate due to an improper assessment of Plaintiff's RFC. These arguments are addressed in turn.

1.      **The ALJ Adequately Discharged His Duty to Develop the Record**

As part of his claim that his RFC was not properly assessed, Plaintiff argues that the ALJ failed to develop the record because he did not obtain records from Plaintiff's period of incarceration. Pl. Br. at 15. Beginning in 2014, Plaintiff spent seven years in prison and was released on parole in 2021. AR. at 105.

Whether the ALJ failed to develop the record is a threshold issue because the Court cannot determine whether the RFC finding is supported by substantial evidence if it is based on an incomplete record. *See Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016). A social security ALJ has an affirmative duty to develop the record. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). That duty is heightened where the disability in question is psychiatric. *See Bushansky v. Comm'r of Soc. Sec.*, No. 13-CV-2574 (JGK), 2014 WL 4746092, at *5 (S.D.N.Y. Sept. 24, 2014). However, where there are no obvious gaps in the administrative record, the ALJ has no further obligation. *See Lebby v. Comm'r of Soc. Sec.*, No. 20-CV-47609 (PKC), 2022 WL 580983, at *4 (E.D.N.Y. Feb. 24, 2022).

Here, the ALJ requested and received 26 pages of Plaintiff's medical records from his time in prison, covering the period from January through October of 2021. AR. at 319–344. These records address Plaintiff's lab work, vision, and mental state. *Id*. In a preventative health assessment dated May 4, 2021, Plaintiff reported no suicidal ideations. *Id*. at 321. The assessment determined that no psychology referral was "needed at this time." *Id*. at 322. An October 13, 2021

14

report found no chronic psychiatric conditions, no employment restrictions, and stated Plaintiff could complete activities of daily living. *Id.* at 336.

The ALJ considered these records in connection with Plaintiff's visual impairment, noting that while the "claimant apparently had previous outpatient treatment when he was incarcerated . . . there are no records of that treatment." *Id.* at 54. Plaintiff argues that this absence of records signifies a failure to develop the record. But mere speculation that additional records "exist or could be obtained is not a sufficient basis upon which to warrant remand." *Kaitlynn K. v. Comm'r of Soc. Sec.*, No. 20-CV-1878 (MWP), 2023 WL 2165179, at *5 (W.D.N.Y. Feb. 22, 2023); *see also Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018) (finding that the "theoretical possibility" of missing records does not establish the ALJ's failure to develop the record).

Additionally, during the July 25 hearing, Plaintiff's representative requested additional time to ensure the record was "current," but did not advise the ALJ of any records showing earlier psychological treatment. AR. at 97. The ALJ granted that request, holding the record open for 30 days. *Id.* at 98. On November 3, 2023, the ALJ issued a letter notifying Plaintiff's representative of additional evidence obtained and advising that she "may submit . . . any additional evidence" for consideration. AR. at 313. Plaintiff's representative submitted no supplemental documentation nor mentioned any missing records. *See* AR. at 317–18; *Ballantyne T. v. Comm'r of Soc. Sec.*, No. 23-CV-11182 (HJR), 2025 U.S. 2025 WL 551820, at *9 (S.D.N.Y. Feb. 19, 2025) (finding the ALJ satisfied her duty to develop the record

when she held the record open after the hearing to permit the submission of additional evidence and counsel did not indicate any documentation was missing).

Ultimately, the ALJ obtained Plaintiff's prison medical records by subpoena. These records showed an unremarkable mental status from January 2021 through October of that year and did not indicate that Plaintiff had received any prior assessment of or treatment for his mental health while incarcerated. *See* AR. at 319–344. On these facts, and considering that the relevant period for determining whether Plaintiff was disabled began on November 23, 2021, it was reasonable for the ALJ to conclude that there were no obvious gaps in the record. Accordingly, the Court should find that the ALJ adequately developed the record.

### 2. The ALJ's Failure to Provide a Function-by-Function Assessment Does Not Require Remand

Next, Plaintiff asserts that the ALJ erred in failing to perform a function-by-function assessment of Plaintiff's limitations and contends that this failure requires remand. Pl. Br. at 10–11.

Governing regulations require an ALJ to identify the plaintiff's functional limitations or restrictions in the RFC analysis, and to assess the claimant's work-related abilities on a function-by-function basis, including the abilities to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch. *See* 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a). However, the Second Circuit expressly declined to adopt a *per se* rule that an ALJ's failure to conduct such a function-by-function analysis requires remand. *Cichocki v. Astrue*, 729 F.3d 172, 176-177 (2d Cir. 2013). Instead, the relevant question is whether the ALJ applied

the correct legal standards and whether the ALJ's determinations were supported by substantial evidence.  *Id.*; *see also Domm v. Colvin*, 579 F. App'x 27, 29 (2d Cir. 2014) (affirming an ALJ's denial of disability when the opinion was supported by substantial evidence and the ALJ applied the correct legal standards, despite a failure to perform a function-by-function assessment).

     Plaintiff's discussion of this issue relies on little more than the ALJ's failure to perform a function-by-function assessment of Plaintiff's limitations, which does not, by itself, require remand.  *See* Pl. Br. at 10–11.  Further, Plaintiff cites two decisions that predate *Cichocki* to support his position.  Pl. Br. at 10 (citing *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 208 (W.D.N.Y. 2005) and *Novak v. Astrue*, No. 07-CV-8435 (SAS), 2008 WL 2882638, at *3 (S.D.N.Y. July 25, 2008)).  The Court should not remand on this basis.

### 3.    The ALJ Properly Considered the Opinions of Record

Plaintiff next argues that the ALJ erred in considering the medical opinions of record because he did not adequately discuss how he considered their supportability and consistency.  Pl. Br. at 11.

An ALJ must consider all medical opinions and evaluate their persuasiveness using the factors listed in 20 C.F.R. § 416.920c(c).  *See* 20 C.F.R. § 416.920c(a). Supportability and consistency are the most important factors, and 20 C.F.R. § 416.920c(a)–(c) requires an ALJ to articulate "how well a medical source supports their own opinion(s) and how consistent a medical source/opinion is with the medical evidence as a whole."  *Acosta Cuevas v. Comm'r of Soc. Sec.,* No. 20-CV-0502 (AJN) (KHP), 2021 U.S. Dist. LEXIS 19212, at *28 (S.D.N.Y. Jan. 29, 2021).

An ALJ must provide more than conclusory statements in his explanation of a medical opinion's supportability and consistency. *See Loucks v. Kijakazi*, No. 21-CV-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) ("[T]he ALJ did not address the opinion's supportability or explain how the opinion was consistent with the record, except to conclude that it was") (summary order). Failure to do so amounts to a procedural error and may warrant remand. *Id*. However, when such an error occurs, a court may affirm an ALJ's decisions if "a searching review of the record assures [the court] that the substance of the [regulation] was not traversed." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (cleaned up). Further, the ALJ need not "state on the record every reason justifying a decision," *Brault*, 683 F.3d at 448, nor is the ALJ required to recite each piece of evidence contributing to a determination. *See Cichocki*, 729 F.3d at 178 n.3. The ALJ's opinion need only "permit [the court] to glean [the ALJ's] rationale." *Id*. (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Plaintiff presents several intertwined arguments that the ALJ did not properly analyze the opinions offered by Dr. Sebold and Dr. Goldstein. Pl. Br. at 13–15. In evaluating Plaintiff's mental impairments, the ALJ found Dr. Sebold's opinion persuasive while finding Dr. Goldstein's opinion had "limited persuasive value." AR. at 56. In reaching these conclusions, the ALJ explained that Dr. Sebold's examination more accurately supported his assessment as compared to Dr. Goldstein's assessment, which relied on Plaintiff's subjective reporting. *Id*. The ALJ also found that Dr. Goldstein's opinion was inconsistent not only with the

overall record, which "supports little in the way of significant psych impairment," but also with the underlying results of Dr. Goldstein's own examination, speaking to its supportability. *Id.* Finally, the ALJ cited Dr. Blackwell's opinion, which questioned Dr. Goldstein's findings of psychosis. *Id.* at 57.

The ALJ conducted a lengthy RFC analysis, weighing Dr. Sebold and Dr. Goldstein's medical opinions both against each other and against the record as a whole. *Id.* at 53–57. The ALJ relied upon and consistently cited treatment notes, examination results, and Plaintiff's testimony in reaching his determination as to the persuasiveness of each medical opinion. *Id.* Accordingly, the ALJ considered both the supportability and consistency of these opinions.

Plaintiff argues that the ALJ failed to explain his implicit rejection of Dr. Sebold's findings of Plaintiff's mild limitations in concentration persistence and pace, social interaction, and self-regulation. Pl. Br. at 13. Plaintiff says the RFC did not incorporate these limitations. *Id.* However, the RFC analysis referenced Dr. Sebold's finding of "mild to moderate limitations in understanding and remembering complex instructions and direction" and noted that "[t]he claimant had none or mild limitation in other areas of mental function[.]" AR. at 55. The overall RFC analysis, therefore, permits the Court to "glean [the ALJ's] rationale" on this matter. *Cichocki*, 729 F.3d at 178 n.3. Here, the ALJ took these limitations into account by including "a limitation to simple work." AR. at 57. Evidence of mild or moderate limitations does not negate the ALJ's determination that Plaintiff "is limited to simple, routine instructions and tasks." *Id.* at 53; *see Rushford v.*

*Kijakazi*, No. 23-CV-317, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023) ("[I]t is well-established that such moderate limitations do not prevent individuals from performing unskilled work) (internal quotations omitted) (summary order).

Relatedly, Plaintiff argues that the ALJ failed to address the consistency between Dr. Sebold's and Dr. Goldstein's opinions in that both found several moderate mental limitations. *See* Pl. Br. at 14. Although these evaluations share certain findings, the two opinions ultimately diverge. Dr. Goldstein concluded Plaintiff's symptoms "significantly interfere with [his] ability to function on a daily basis," whereas Dr. Sebold found no interference with daily function. *Id*. at 349, 390. Thus, Plaintiff's contention that "Dr. Sebold's opinion is consistent with the opinion offered by Dr. Goldstein" overstates the similarity. Pl. Br. at 14. Moreover, the ALJ did address Dr. Goldstein's findings of "a number of moderate mental functional limitations," noting that these findings were "largely based on [Plaintiff's] self-report." AR. at 55. The Court, therefore, should be satisfied that the ALJ did not "traverse" the requirement to assess medical opinions appropriately, and did not "cherry-pick" medical opinions, as suggested by the Plaintiff. *See Estrella*, 925 F.3d at 96; Pl. Reply. Br. at 2. Rather, he adequately discussed supportability and consistency factors of these two opinions. The Court should decline to remand on these grounds.

## B. The ALJ's Improper Evaluation of Plaintiff's Credibility Warrants Remand

Plaintiff next argues that the ALJ erred in improperly rejecting Plaintiff's testimony as not credible. Pl. Br. at 17.

Social Security regulations require a two-step process for evaluating a claimant's testimony regarding pain and other symptoms. First, the ALJ must determine whether the plaintiff has an underlying medical condition or impairment reasonably expected to produce the alleged symptoms. *See* 20 C.F.R. § 404.159(a). If a plaintiff does suffer from a severe impairment, the ALJ must then consider the extent to which the plaintiff's testimony concerning the alleged symptoms are reasonably consistent with medical evidence. *Id.*; s*ee also Genier v. Astrue*, 606 F.3d 26, 49 (2d Cir. 2010) (finding that an ALJ "is not required to accept the [plaintiff's] subjective complaints without question" and "may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record."). Courts have found that subjective symptoms are a critical factor in determining disability. *See Valet v. Astrue*, No. 10-CV-3282 (KAM), 2012 WL 194970, at *21 (E.D.N.Y. Jan. 23, 2012) (quoting *Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984)).

An ALJ, however, cannot reject a plaintiff's testimony about the intensity and persistence of symptoms solely because the available medical evidence does not substantiate the plaintiff's claims. 20 C.F.R. § 404.1529(c)(2). Instead, an ALJ must consider the credibility factors outlined in 20 C.F.R. § 404.1529(c)(3). These credibility factors include:

> (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning

the claimant's functional limitations and restrictions as a result of the
pain.

20 C.F.R. § 404.1529(c)(3). Moreover, "the ALJ must consider all of the evidence in

the record and give specific reasons for the weight accorded to the [Plaintiff's]

testimony." *Garcia v. Kijakazi*, No. 22-CV-1620 (KAM), 2023 U.S. Dist. LEXIS

184572, at *18 (E.D.N.Y. Oct. 13, 2023) (quoting *Alcantara v. Astrue*, 667 F. Supp.

2d 262, 277–78 (S.D.N.Y. 2009)).

Remand is appropriate where an ALJ insufficiently applies the credibility

factors or where an ALJ's credibility analysis fails to refer to or discuss the factors

listed in 20 C.F.R. section 404.1529(c)(3). *See Joseph v. O'Malley*, 772 F. Supp. 3d

265, 275 (E.D.N.Y. 2024); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

An ALJ need not explicitly examine all seven factors. *See Cichocki v. Astrue*, 534 F.

App'x 71, 76 (2d Cir. 2013). Rather, a thorough explanation of the ALJ's credibility

determination and a record that permits the court to "glean" the ALJ's rationale is

sufficient to avoid remand. *Id*. Still, merely reciting Plaintiff's medical history,

even with a limited review of the specified factors, "falls short of a proper credibility

analysis." *Williams v. Berryhill*, No. 17-CV-1660 (JMA), 2019 WL 1271647, at *5

(E.D.N.Y. Mar. 19, 2019).

In assessing Plaintiff's credibility, the ALJ found, "the claimant's medically

determinable impairment could cause the alleged symptoms; however, the

claimant's statements concerning the intensity, persistence and limiting effects of

these symptoms are not entirely consistent with the medical evidence and other

evidence in the record." AR. at 54. Plaintiff describes this language as

"boilerplate," claiming the ALJ "failed to state with specificity how he evaluated [Plaintiff's] symptoms or cite the evidence, consistent with the factors outlined in the regulations, that he believes undermined [Plaintiff's] allegations, in error." Pl. Br. at 18. Although courts have criticized such use of boilerplate language, its use alone does not warrant remand "if the ALJ has otherwise adequately engaged in a credibility analysis." *See Bass v. Berryhill*, No. 16-CV-6721 (JCM), 2017 U.S. Dist. LEXIS 165548, at \*32 (S.D.N.Y. Oct. 5, 2017) (quoting *Sylcox v. Colvin*, No. 14-CV-2161 (PAC) (HBP), 2015 U.S. Dist. LEXIS 123062, at \*43 (S.D.N.Y. Sept. 15, 2015)).

Here, the ALJ discussed Plaintiff's mental health treatment, writing "there is no indication that the [plaintiff] was engaged in mental health treatment until in or around March 2023." AR. at 54. The ALJ also discussed Plaintiff's daily activities, noting that Plaintiff "lived with his mother and helped with cooking, cleaning, doing laundry and shopping" and that "[h]e was independent in personal care and reported enjoying participating in online social media activity and socializing with friends." *Id*. at 56. The ALJ concluded that Plaintiff's "independence in managing basic functions of daily life, including using public transportation, socializing and managing money, is incompatible" with the significant limitations in meeting the demands of daily life that Plaintiff claims. *Id*. at 53.

While this discussion addressed factors (1) and (5), the ALJ did not address any of the other factors specified in § 404.1529(c)(3), despite testimony arguably touching upon several of them. *Id*. at 53–57; *see Taylor v. Comm'r of Soc. Sec.*, No. 13-CV-5995 (VB), 2014 WL 2465057, at \*13 (S.D.N.Y. May 21, 2014) (remanding

where the ALJ failed to address all regulatory factors relevant to determining plaintiff's credibility); *Pereyra v. Astrue*, No. 10-CV-5873 (DLI), 2012 U.S. Dist. LEXIS 122925, at *41 (E.D.N.Y. Aug. 28, 2012) (remanding where the ALJ failed to discuss intensity, duration, and frequency of plaintiff's pain or methods employed by plaintiff to relieve pain); *Valet*, 2012 U.S. Dist. LEXIS 7315, at *68 (remanding where the ALJ failed to address each relevant credibility factor); *Owens v. Berryhill*, No. 17-CV-2632 (ADS), 2018 WL 1865917, at *10 (E.D.N.Y. Apr. 18, 2018) (same); *Ingrassia v. Colvin*, 239 F. Supp. 3d 605, 628 (E.D.N.Y. 2017) (same). Although the ALJ provided an extensive summary of Plaintiff's medical history, this is not "a substitute for properly assessing [Plaintiff's] subjective symptoms." *Joseph*, 772 F. Supp. 3d at 277. The ALJ reviewed Plaintiff's daily activities and treatment history, but failed to address other credibility factors. *See id.* at 276 (finding a brief discussion of Plaintiff's daily activities and non-medication treatment were insufficient to meet the demands of § 404.1529(c)(2)).

Moreover, the ALJ did not identify any of Plaintiff's statements concerning his subjective symptoms and explain why he chose to discredit them. See *Joseph,* 772 F. Supp. 3d at 276; *see also Jaeckel v. Colvin*, No. 13-CV-4270 (SJF), 2015 WL 5316335, at *11 (E.D.N.Y. Sept. 11, 2015) ("[T]he ALJ should specify the statements and the evidence in the record and explain why he chooses to discredit the statements with reference to the applicable regulatory factors."). For example, the ALJ failed to discuss, let alone "give specific reasons for the weight accorded to the [Plaintiff's] testimony," regarding the location, duration, frequency, and intensity of

Plaintiff's symptoms, despite testimony describing persistent eye pain, including periodic throbbing that requires Plaintiff to cease activity. *Garcia*, 2023 U.S. Dist. LEXIS 184572, at *18 (cleaned up); AR. at 100. While Plaintiff does not challenge the ALJ's findings regarding his physical impairments,[3] he argues the ALJ improperly discounted his "allegations of severe and persistent symptoms," which appear to encompass Plaintiff's mental health symptoms as well as any physical pain that might aggravate them. Pl. Br. at 17. As for Plaintiff's mental health symptoms, the ALJ failed to discuss Plaintiff's testimony describing feelings of claustrophobia and anxiety when completing daily tasks or encountering loud noises and small spaces. AR. at 102. Plaintiff also reported jarring flashbacks that interrupt his sleep, a symptom that could aggravate anxiety and depression or otherwise affect Plaintiff's functional limitations. *Id.* Nor did the ALJ's analysis refer to Plaintiff's prescribed medications, which he takes to manage pain, depression, and anxiety, or Plaintiff's testimony that his medication "doesn't really help" when his symptoms are at their worst. *Id.* at 100, 103.

Accordingly, the ALJ did not provide an adequate explanation for discounting Plaintiff's subjective testimony. *See Owens*, 2018 WL 1865917, at *9 (E.D.N.Y. Apr. 18, 2018) (finding the ALJ must explain his rejection of Plaintiff's subjective testimony "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief") (quoting *Brandon v.*

---

[3] The Court has an independent obligation to evaluate the record for absence of error, regardless of the arguments raised by Plaintiff. *See De Camacho v. O'Malley*, 717 F. Supp. 3d 354, 366 (S.D.N.Y. 2024).

*Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)); *see also Hertz v. Colvin*, No. 13-CV-6449 (FPG), 2015 U.S. Dist. LEXIS 132776, at *8 (W.D.N.Y. Dec. 20, 2015) ("Without a stated basis for her credibility assessment . . . it is impossible for the Court to conduct a meaningful review of the ALJ's findings to determine whether they are supported by substantial evidence"). As a result, the case should be remanded for the ALJ to reconsider and explain his credibility determinations. It is possible that the ALJ would reach the same conclusion on remand, but any new credibility determination should address Plaintiff's testimony more specifically with reference to the factors outlined in 20 C.F.R. § 404.1529(c)(3).

### C. Vocational Expert Testimony

Finally, Plaintiff argues that the ALJ erred in relying upon the VE's testimony because the ALJ's hypothetical failed to incorporate additional mental health limitations supported by the record. Pl. Br. at 19.

An ALJ may rely upon a VE's response to a hypothetical question, provided that question reflects a proper RFC assessment supported by substantial evidence in the record. *See Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010); *Salmini v. Comm'r of Soc. Sec.,* 371 F. App'x 109, 114. (2d Cir. 2010). An ALJ cannot, however, properly rely on a VE response if the underlying assessment of Plaintiff's RFC is flawed, including any failure to adequately consider Plaintiff's subjective complaints of pain and other symptoms. *See Baker v. Berryhill*, No. 17-CV-8433 (AT) (DF), 2019 WL 1062110, at *35 (S.D.N.Y. Feb. 19, 2019).

As the ALJ erred in assessing Plaintiff's subjective testimony, the hypothetical posed to the VE is likewise "infected with error." *Id*. Therefore, the VE's testimony does not constitute substantial evidence at step five of the evaluation process.

## IV.    CONCLUSION

For the reasons stated above, pursuant to sentence four of 42 U.S.C. § 405(g), Plaintiff's motion for judgment on the pleadings should be **GRANTED**, and this case should be **REMANDED** for further proceedings.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. *See* Fed. R. Civ. P. 6(a), (b), (d). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable J. Paul Oetken, United States Courthouse, 40 Foley Square, New York, New York 10007-1312. Any requests for an extension of time for filing objections must be directed to Judge Oetken.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

R

27

Dated: July 30, 2025
     New York, New York

_____

Henry J. Ricardo
United States Magistrate Judge